UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

TERRY L. MCCOY                                                                                          PLAINTIFF

v.                                        Civil No.6:15-CV-06015-SOH-BAB

WARDEN KATHY                                                                                        DEFENDANTS
BROWN, ASST. WARDEN
HAVARD, and OFFICER
ROBINSON (Mailroom
Personnel)

### REPORT AND RECOMMENDATION

This is a civil rights action filed by Plaintiff, Terry L. McCoy, pursuant to the provisions of 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

Currently before the Court is Defendants' Motion for Summary Judgment. ECF No. 40. A hearing was held on February 10, 2016, to allow the Plaintiff to give a sworn oral statement in response to the Motion. ECF No. 45. After careful consideration of the briefing and sworn statement of the Plaintiff, the undersigned makes the following Report and Recommendation.

1.   **BACKGROUND**

During the time at issue in his Complaint, Plaintiff was incarcerated in the Omega Technical Violator Center in Malvern, Arkansas. Plaintiff filed his Complaint with the Eastern District of Arkansas on January 22, 2015. ECF No. 2. He also filed an Addendum (ECF No. 4),

Motion for Summary Judgment (ECF No. 8), and Amended Complaint (ECF No. 9) before the case was transferred to this District on February 26, 2015. ECF No. 11. Plaintiff brought suit against all Defendants in their official capacity only. ECF No. 2, p. 2. Plaintiff seeks monetary damages. ECF No. 2, p. 7.

Plaintiff attached a copy of the relevant Omega Center policy at issue to his Complaint. This mailroom policy has several annotations by Plaintiff. The section which appears pertinent to his claim states: "NO unauthorized material (etc. writing paper, newspaper clippings, newspapers, stickers, metal in cards, cards larger than 5X7, phone cards, internet/email printouts, lottery or powerball tickets. )" ECF No. 2, p. 6, ¶ 7.

In his Complaint, Plaintiff alleges his First Amendment constitutional rights were violated in the Omega Center because Center policy "places a complete ban on inmates receiving newspapers from the publisher, which is a violation of my mail rights." ECF No. 2, p. 4. On February 2, 2015, Plaintiff filed an Addendum to his Complaint. This document is entitled a Motion in Support of Complaint, and alleges the Defendants have established a handbook for inmates which is unconstitutional because it permits control of newspapers. ECF No. 4.

On February 24, 2015, Plaintiff filed a Motion for Summary Judgment. ECF No. 8. In his Motion, Plaintiff argues his First Amendment rights were violated between his intake date of June 5, 2014, until his discharge date of September 3, 2014, because the Omega Handbook prohibited unauthorized materials, including newspapers. Defendants responded on May 11, 2015. ECF No. 29.

Plaintiff also filed an Amended Complaint on February 24, 2015. ECF No. 9. In his Amended Complaint, he alleges the officers/staff are intentionally delaying legal correspondence

with the Court. He stated that on three occasions, his mail was not picked up or delivered when other inmates near him had mail delivered or picked up. ECF No. 9, p. 1.

Plaintiff filed a Motion to Amend Complaint on May 21, 2015. ECF No. 31. In this Motion Plaintiff requested leave to amend his Complaint to sue Defendants in their individual capacity, removing the official capacity claims. ECF No. 31, p. 1. Plaintiff also provided additional allegations concerning exhaustion of administrative remedies. He alleges he read the Handbook on the day he was admitted. Approximately one hour after being processed into the facility, he noticed the unconstitutional policy in the Handbook. ECF No. 31, p. 3. "[W]ithin minutes" of making the finding, he informed the designated problem-solver. The designated problem-solver told him to fill out a request form and give it to Ms. Robertson, Mailroom Personnel Staff.[1] Plaintiff then alleges he filed "a grievance and request form" that same day on June 5, 2014, but did not receive a response from Robertson. ECF No. 31, p. 4. He characterized this as his Step One grievance. He alleges he filed another grievance to Defendant Havard, the Assistant Warden, when he received no response from Robertson. He characterized this as his Step Two grievance. ECF No. 31, p. 4. He then alleges he filed a Level Three grievance on two different forms with the Grievance Officer at the Omega Center and Defendant Warden Brown when he received no response from Defendant Havard. ECF No. 31, pp. 4-5. Defendants had no objection to the Amendment (ECF No. 32), and the Motion was granted on August 12, 2015. ECF No. 37.

---

[1] It is assumed Plaintiff is referring to Defendant Robinson, who is also identified as Mailroom Personnel. The Court uses the name Robertson in this paragraph to indicate what Plaintiff stated in his Motion, but will use Robinson in the Discussion section of this Report.

The Court entered a Report and Recommendation for Plaintiff's Motion for Summary Judgment on June 24, 2015. ECF No. 33. The Report recommended denying Plaintiff's Motion, as several material questions of fact remained as to whether the mail policies were reasonably related to legitimate penological objectives. The Report was adopted on August 6, 2015. ECF No. 36.

Defendants filed their Motion for Summary Judgment on October 14, 2015. ECF No. 40. In the submissions for this Motion, Defendants provided information about the Omega Center and its policies. They state the Omega Center is a "highly structured, intensive treatment modality designed to encourage cognitive and behavioral changes in inmates who are preparing to be released on parole after their initial release from prison was unsuccessful." ECF No. 40-1, p. 1. As part of this modality, Omega inmates are encouraged to use the many tools available to them in the facility, such as mentoring and counseling, rather than "merely passing time." ECF No. 40-1, p. 3. Inmates are also assigned jobs and responsibilities in order to help them develop useful skills. ECF No. 40-1, p. 3. As a result, inmates have very little unstructured time, and "limitations and restrictions are placed on the amount of time residents are allowed to have access to newspapers, magazines, television and radio." ECF No. 40-1, p. 3. Inmates may request a publication, such as a newspaper, and each request will be reviewed according to policy. ECF No. 40-1, p. 3. According to the standard operating procedures, requests for publications are reviewed by the Assistant Warden. ECF Nos. 40-2, p. 4; 40-3, p. 2.

A Summary Judgment Hearing was held on February 10, 2016. ECF No. 45. Plaintiff was not incarcerated, and appeared in person to give a sworn statement in response to the Motion.

At the hearing, Plaintiff testified as follows. His sole claim was for deprivation of newspapers. When asked how Defendants deprived him of newspapers, he said he read the handbook policy and asked about newspapers. "They told me to fill out a grievance. I filled out a grievance and never got it back. You never see it again." He got another Handbook from Defendant Brown with a request form to request newspapers. He filled out the request form and gave it to Defendant Brown. Defendant Brown returned it to him with a note on it stating "You are no different from any other resident. You cannot have copies of your grievances because copies cost money." Plaintiff did not have any copies of his requests or grievances. He stated he filed four grievances about newspapers and never received anything back. He did not file grievances about any other issues at Omega Center. Plaintiff suffered no physical injury from not getting a newspaper, only emotional and mental injury. When asked if anyone had prevented him from making a request or grievance for newspapers, Plaintiff stated the mailroom clerk did, because he never heard back. He stated he tried to file grievances but they disappeared, and inmates did not get to keep carbon copies of the grievances. He filed a grievance at another ADC unit for his asthma. When asked if he thought Defendant Brown had any ill will toward him, or if this was just a policy of the facility, Plaintiff stated "They look at you differently after you file paperwork." Plaintiff stated Omega Center tried to keep the residents busy for the purpose of rehabilitation.

Defendant stood on their Motion, but asked the Court to confirm Plaintiff's understanding of grievance completion. Plaintiff was then asked if he had done any follow up on the grievances when he did not hear anything back about them. Plaintiff stated "Follow up is by request. I did

follow up." Plaintiff further testified he followed-up in writing. He felt he had exhausted his remedies.

**2.    LEGAL STANDARD**

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**3.    DISCUSSION**

Defendants argue Plaintiff's Complaint must be dismissed because he did not file or exhaust any grievances concerning any issue while at Omega Center. ECF No. 42, pp. 4-6. Defendants further argue: 1) Plaintiff lacks standing; 2) Plaintiff's claims against Defendants

6

Havard and Brown are barred by the doctrine of *respondeat superior*; 3) Plaintiff did not suffer any physical injury; and 4) Defendants are entitled to qualified immunity.  ECF No. 42, pp. 8-16.

The Prison Litigation Reform Act ("PLRA"), mandates exhaustion of available administrative remedies before and inmate files suit.  Section 1997e(a) of the PLRA provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded that "exhaustion [as required by the PLRA] is not *per se* inadequate simply because an individual later sued was not named in the grievances."  *Id.* at 219.  "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules."  *Id.* at 218 (internal quotation marks and citation omitted).  The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Id.*

Based on the affidavit of Walter White, ACC Administrative Review Officer, the Omega Center grievance policy in place during Plaintiff's residence was Administrative Directive 08-09. ECF No. 40-4.  Under 08-09, Step One requires the inmate to verbally attempt to resolve any issues thought their counselor, Residential Supervisor, or Shift Supervisor.  If that verbal process fails, the inmate may then submit a formal written grievance to the Grievance Officer or the Center Supervisor's Designee on a Grievance Form.  At Step Two Plaintiff may appeal a Step One decision to the Center Supervisor.  The Center Supervisor's decision may be appealed to the

Deputy Director for Residential Services. ECF No. 40-5, pp. 2-4.

Based on Plaintiff's submissions and testimony, Plaintiff confused the request for publication process with the grievance process. A request for publication is not a grievance under Center policy and procedure. During his testimony, Plaintiff used the term request and grievance interchangeably. In his Motion to Amend Complaint (ECF No. 31) he alleges he noticed the unconstitutional policy concerning newspapers about an hour after being booked into Omega Center on June 5, 2016, and talked to someone about it minutes later. He alleges he was given a request form and told to submit it to Defendant Robinson, Mailroom Personnel Staff. ECF No. 31, p. 3-4. In the next paragraph of his Motion, he alleges he filed his Step One grievance with mailroom personnel on June 5, 2014. He alleged he filed his Step Two grievance with Assistant Warden Havard. ECF No. 31, p. 4. This is appropriate procedure in the request for the publication process, which is reviewed by the Assistant Warden. It is not proper procedure for the grievance process, in which a Step Two grievance is submitted to the Center Supervisor. Plaintiff alleges he filed his Step Three grievance with both Defendant Warden Brown and the Grievance Officer at the Omega Center. ECF No. 31, pp. 4-5. Under the grievance policy, the final appeal on a grievance must be directed to the Deputy Director for Residential Services. At no time has Plaintiff alleged he submitted anything to either the Center Supervisor or the Deputy Director for Residential Services. Therefore, based on his own submissions and testimony, Plaintiff could not have exhausted the Omega Center grievance process.

Further, Plaintiff provided no documentation of grievances to support his claims, testifying only that he never got copies back, or that he did not get to keep carbon copies of the grievances. Plaintiff may not rely solely on these allegations as proof that he exhausted his administrative

remedies. Fed. R. Civ. P. 56(e); *Kneibert v. Thomson Newspapers, Michigan Inc.,* 129 F.3d 444, 455 (8th Cir. 1997) (to survive a motion for summary judgment, a plaintiff "must provide sufficient, probative evidence which would permit a fact finder to rule in his favor").

In contrast, Defendants argue Plaintiff did not file a single grievance about any issue while he was in the Omega Center, and provided documentation to support that argument. ECF No. 42, pp. 5-6. Defendant Brown, who was the Warden of Omega Center during this time, stated Plaintiff did not submit a request for a newspaper during his stay, and did not submit any grievance forms. ECF No. 40-1, p. 4. Defendants also submitted an ADC printout of inmate grievances for his entire incarceration in the ADC. This list indicated Plaintiff filed three grievances, one in 2011 and two in 2015. ECF No. 40-6. These grievances did not occur during Plaintiff's time in Omega Center and did not involve any complaint concerning newspapers. The Omega Center has provided copies of grievances submitted by inmates in past cases.[2] There is no reason to believe they would not have done so in this case if they were available.

No genuine material question of fact remains for resolution. Plaintiff failed to exhaust his administrative remedies, and dismissal of this case is mandatory.

**4.    CONCLUSION**

For the reasons stated, I recommend that Defendants' Motion for Summary Judgment (ECF No. 40) be **GRANTED** and Plaintiff's Complaint be dismissed with prejudice.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely**

---

[2] *See e.g. Williams v. Aldridge*, No. 6:13-cv-6004, 2015 WL 672683, *4 (W.D. Ark. 2015); *Hutts v. Kelley*, No. 5:14-cv-00269-KGB-JTK, 2015 WL 7731609, n.4 (E.D. Ark. 2015).

**objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **30th day of June 2016.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE